# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARLA HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 06-CV-3105 |
| v. ) | |
| ) | District Judge Robert M. Dow, Jr. |
| JOHN E. POTTER, POSTMASTER, ) | |
| GENERAL, UNITED STATES POSTAL ) | |
| SERVICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carla Hill ("Hill") filed a two count complaint alleging that she was subject to discrimination on the basis of her disability in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and retaliation for filing EEOC complaints in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. Defendant John E. Potter, Postmaster General of the United States Postal Service ("Potter"), originally filed a motion to dismiss (or in the alternative for summary judgment) [33]. The Court denied that motion without prejudice [57]. Defendant subsequently filed a renewed motion for summary judgment [61], contending that Plaintiff failed to exhaust her administrative remedies. For the following reasons, the Court denies Defendant's motion for summary judgment [61].

## I. Background

### A. Standard

The Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R. 56.1") statements. The Court resolves all genuine factual ambiguities in Plaintiff's favor (see *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004)), and takes no position on

whose version of disputed factual matters is correct. See, *e.g.*, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (stressing that on summary judgment, courts must look "at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true").

L.R. 56.1 requires that statements of facts contain allegations of material fact and that those allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See*, e.g., Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). As noted above, where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See*, e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Finally, the Court disregards any additional statements of fact contained in a party's response brief rather than in its statement of additional facts. See*, e.g., Malec,* 191 F.R.D. at 584 (citing *Midwest Imports,* 71 F.3d at l317).

**B.     Facts**

Plaintiff Carla Hill began working for the United States Postal Service ("USPS") as a letter carrier at the Hazel Crest, Illinois Post Office. Def. SOF ¶ 1. She was stationed at that office during the time period relevant to this case. She is still employed as a postal worker although the record is unclear whether she remains at the Hazel Crest office. *Id*.

On May 4, 2005, Hill contacted a USPS EEO Dispute Resolution Specialist to lodge a complaint that she was discriminated against and harassed based on her race, sex, age and marital status of being married to a Mexican and retaliated against for engaging in prior EEO activity. Def. SOF ¶ 2. Those claims stemmed from an incident on March 21, 2005, in which James Fuscaldo ("Fuscaldo") used a scanner with Hill's social security number. *Id*. On May 10, 2005, Hill again contacted an EEO Dispute Resolution Specialist alleging that she was discriminated against and harassed based on her race, sex, age and marital status of being married to a Mexican and retaliated against for engaging in prior EEO activity. *Id*. ¶ 3. The basis of this complaint was that Fuscaldo used the scanner with Hill's social security number on May 5 and 9, 2005. *Id*. On May 17, 2005, Hill again contacted an EEO Dispute Resolution Specialist alleging that she was discriminated against and harassed based on her race, sex, age and marital status of being married to a Mexican and retaliated against for engaging in prior EEO activity and having a physical disability. *Id*. ¶ 4. The first page of the complaint discussed an incident in which Patrick Kavanaugh ("Kavanaugh"), a Postmaster, called Hill's orthopedic doctor on April 29, 2005. *Id*. Hill also attached a seven page handwritten letter to the May 17, 2005 pre-complaint form which made numerous other allegations.

On June 23, 2005, Hill filed a formal complaint of discrimination against the USPS in EEO Case No. 4J-604-0101-05 ("Case No. 0101-05") alleging that she was discriminated against

based on her race ("African American"), color ("Black"), sex ("Female"), age ("45 years of age"), and disability ("On the Job Back Injury") and retaliated against for engaging in "prior EEO activity." Def. SOF ¶ 5; Pl. SOF ¶ 21. Included in that complaint were statements that: (i) Hill received a letter from Dale Schultz informing her to provide medical documentation; (ii) Kavanaugh contacted her orthopedic doctor trying to obtain medical information; (iii) "Dale Schultz [told me] * * * that my doctor can't tell them what to do and I have been hired to be carrier and I am going to carry mail and that's it"; (iv) "[s]ince my original injury in November 2002 they have been harassing the hell out of me"; (v) "In December 2003 my hours were cut from being an 40 hour regular to a 13-15 hour week regular" while another worker was allowed to continue working 40 or more hours a week; (vi) "James Fiscauldo told my union vice president that he was going to force me to go back to the street carrying mail against my doctor's restrictions! James Fiscauldo will not let me case mail on my route but he said I could if I carry my route * * *"; (vii) "My doctor says I can't carry mail because it will always cause me to have recurrences. Dr. Booker recommended permanent change of 'inside duties.' They aren't willing to accommodate me * * *"; and (viii) "The managers are all aware of my prior EEO activity since my EEO's are filed against them * * * Their retaliatory actions are all because of my filing EEO's against them – Retaliating against me because of my permanent disability to not be able to no longer carry mail." Pl. SOF ¶¶ 22-27; Def. SOF ¶ 5. Hill also attached a letter to her formal complaint in which she claimed that as a result of her absences for May 23, 2005, she was charged with .6 units of Leave Without Pay ("LWOP"). Def. SOF ¶ 5.

On June 28, 2005, the USPS EEO Office issued a Partial Acceptance/Dismissal of Complaint in EEO Case No. 0101-05 which summarized Hill's claims as whether she was discriminated against based on her race, color, sex, age, disability and retaliation when:

4

(1) on March 21, May 5, and May 9, 2005, Supervisor Fuscaldo used your scanner with your social security number; (2) on April 29, 2005, Postmaster Kavanaugh (Calumet City Post Office) contacted your orthopedic doctor and requested information on your back injury even though he was no longer the Postmaster of Hazel Crest, IL and you didn't sign a medical release; (3) on May 10, 2005, you completed a PS Form 3971 for 2 hours of sick leave for May 23 and was charged LWOP and Supervisor Fuscaldo changed the requested leave without permission; (4) on June 16, 2005, you received a letter from Dale Schultz, Injury Compensation Unit, advising you that you needed to submit updated medical since your current medical was not acceptable, and you alleged that Supervisor Fuscaldo threatened to make you go back on the street to carry mail; and (5) on June 17, 2005, your check stub had .6 LWOP and you alleged that you punched in at 8:06 AM and that you are guaranteed a 5-minute leeway which is up to .8.

Def. SOF ¶6. The Partial Acceptance/Dismissal of Complaint notified Hill that the issues numbered (1) and (4) were not accepted for investigation and were dismissed for failure to state a claim. *Id*. ¶ 7.

After the EEO investigation was completed, Hill requested a Final Agency Decision ("FAD"). Def. SOF ¶ 8. The FAD was issued on October 21, 2005, and found that Hill was not discriminated against with regard to the issues that were accepted for investigation and affirmed dismissal of issues (1) and (4). *Id*.

Hill then filed an appeal of the FAD to the EEO Commission's Office of Federal Operations ("OFO") on or around November 16, 2005. Def. SOF ¶ 9; Pl. SOF ¶ 28. The OFO denied that appeal on July 24, 2007. Def. SOF ¶ 10; Pl. SOF ¶ 29. The OFO found that, based on the five "accepted" claims, "complainant clearly has not claimed in her complaint that she was denied a reasonable accommodation, nor has she claimed or shown that she was required to work beyond her medical restrictions." Def. SOF ¶ 11.

On May 23, 2006, Hill contacted an EEO Dispute Resolution Specialist alleging that she was discriminated against based on her race, color, sex, age physical impairment; retaliated

against; and subjected to harassment and sexual harassment. Def. SOF ¶ 12.[1] That allegation arose out of an offer of a new limited duty assignment on May 22, 2006. *Id*. On June 6, 2006, Hill withdrew EEO Case No. 4J-604-0092-06. Def. SOF ¶ 13.

Hill filed the present action, and after being appointed counsel, filed her operative second amended complaint ("SAC"). Def. SOF ¶ 14. The SAC alleges, *inter alia*, that: (i) her postal supervisors knew about her work restrictions resulting from a back injury in 2002 and a re-injury on or about July 28, 2004, but failed to follow her doctor's restrictions; (ii) her back injury constituted a disability under the Rehabilitation Act and that on several occasions she requested accommodations from the Postal Service; (iii) the Postal Service failed to provide her with a position as a clerk after she allegedly re-injured her back, isolated her from others, and failed to allow her to maintain a regular work schedule; (iv) her manager took away her "no-lunch" privileges in retaliation for prior complaints of discrimination; and (v) that her workload was "drastically" reduced and that she as harassed and forced to work in "an isolated area." *Id*. Hill has alleged that the claims in the SAC were previously raised in her administrative EEO claim 0101-05. *Id*. ¶ 15.[2]

---

[1] It appears from the record that this complaint was assigned Case No. 4J-604-0092-06.

[2] It appears that Hill has filed at least two other actions in this district. On December 4, 2007, Hill submitted another complaint in this district, *Hill v. Potter, et al.*, 07-cv-6833 (*Hill II*). Def. SOF ¶ 16. The complaint in *Hill II* allegedly was based on claims raised in her EEO case No. 4J-604-0132-06, in which Hill claimed that she was subject to race, gender, reprisal and disability discrimination when she was assigned to perform job duties beyond medical restrictions and that the Postal Service failed to reasonably accommodate her disabilities. *Id*. *Hill II* was terminated on December 26, 2007, after the court denied Hill's motion for appointment of counsel and to proceed *in forma pauperis*. *Id*. ¶ 17. Also on December 4, 2007, Hill submitted a third complaint in this district, *Hill v. Potter, et al.*, 07-cv-6835 ("*Hill III*"). Def. SOF ¶ 18. The Court granted Hill permission to proceed *in forma pauperis* and appointed counsel in *Hill III*. *Id*. ¶ 19.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

B.  **Exhaustion**

Defendant argues that the allegations contained in Hill's SAC are unrelated to the claims that she administratively exhausted in Case No. 0101-05, which provide the basis for this action. Exhaustion is not a jurisdictional issue, but a condition precedent to bringing a claim under both Title VII of the Civil Rights Act and the Rehabilitation Act. See *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citations omitted). "Plaintiffs who have not exhausted their administrative remedies have prematurely brought their claims into the courts." *Teal v. Potter*, --- F.3d ---, 2009 WL 723186, at *3 (7th Cir. Mar. 20, 2009). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek*, 31 F.3d at 500 (citation omitted); see also *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination").

"The purpose of exhaustion is twofold:  to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal*, 2009 WL 723186, at *3 (citations omitted). Because the goals of Title VII also must be considered and the original EEO charges typically are completed in the first instance by laypersons, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id*. (citations omitted). "In addition to those claims which were previously charged, Title VII plaintiffs may also litigate claims which are 'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'" *Id*. (citations omitted). "This standard is a liberal one and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be

discovered in the course of the EEOC's investigation." *Id*. (citations omitted). "[I]n order for claims to be related, 'the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*.'" *Id*. (citations omitted).

Defendant's failure to exhaust argument rests on the premise that the only complaints that may be considered for exhaustion purposes are those that the USPS accepted for investigation. Applying that standard, Potter maintains the allegations contained in the SAC were not among those "accepted" in Case No. 0101-05. The Court rejects that legal argument, and upon review of Hill's EEOC *charge*, finds that Hill properly exhausted the claims asserted in the SAC.

As an initial matter, the Court cannot accept Defendant's overly narrow construction of the exhaustion standard. Hill submitted her EEOC charge to the USPS EEOC in Case No. 0101-05.[3] The USPS then reviewed that charge and summarized Hill's complaints into five "accepted" allegations. Two of those five immediately were rejected. The other three "accepted" charges eventually received a Final Agency Decision. Defendant now maintains that only those five "accepted" allegations were exhausted. Such an interpretation has no support in the case law of this circuit. The Seventh Circuit repeatedly has instructed that the proper document for courts to examine for exhaustion purposes is the EEOC *charge*. See, *e.g.*, *Cheek*, 31 F.3d at 500 ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge"; "the test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway * * *"; "we initially examine the factual allegations in the body of the charge"); see also *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000); *Teal*, 2009 WL 723186, at *3-4.

---

[3] Like other federal agencies, the USPS is charged with the initial disposition of discrimination complaints lodged against the agency by its employees. See 39 C.F.R. § 255.6; 29 C.F.R. §§ 1614.101 et seq.; see also *Smith v. Potter*, 445 F.3d 1000, 1002 n.1 (7th Cir. 2006). Agency employees then have the right to appeal that determination to the EEOC or to file a complaint in federal court. See *id*.

Defendant has located two cases outside of this circuit that he contends support his position. See *Lopez v. Potter*, 2008 WL 2397416 (D. Ariz. June 10, 2008); *Williams v. Potter*, 2008 WL 4534371 (M.D. La. Sept. 30, 2008). However, in light of the Seventh Circuit's consistent focus on the charge as the appropriate document for comparison – including in the *Teal* decision issued earlier this month – the Court is not at liberty to follow the decisions from outside the circuit. Nor would the Court be persuaded to follow those decisions if it were writing on an empty slate. The rationale of our circuit's decisions comports with the twin purposes of exhaustion. First, focusing on the charge itself promotes resolution of the dispute. Even if the agency does not believe that the employee's claim has legal merit, and thus does not "accept" the claim for investigation, the agency may be in position to resolve the claim informally. In addition, the charge ensures that employers receive adequate notice of an employee's complaints, even if the employer chooses to focus on particular matters. For all of these reasons, the Court's exhaustion analysis will focus on Hill's charge in Case No. 0101-05.[4]

1. **Disability Discrimination**

Defendant argues that Hill's administrative complaint failed to allege non-accommodation of any disability under the Rehabilitation Act, and did not contain the same or similar factual allegations to those alleged in Hill's SAC. However, it is clear from a review of the EEOC charge that Hill did in fact allege failure to accommodate. To be sure, the SAC

---

[4] To be certain, if the charge contained acts of discrimination that occurred more than 45 days prior to Hill's initial contact with an EEO counselor, those acts would not be considered by the Court. See 29 C.F.R. § 1614.105(a)(1); *Cupil v. Potter*, 494 F. Supp. 2d 917, 923 (N.D. Ill. 2007). It is possible that the agency refused to accept the allegations that now form the basis of this lawsuit for that reason. However, the record does not indicate that the agency ignored any of Hill's allegations on timeliness grounds, and "when an agency decides the merits of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit." *Ester v. Principi*, 250 F.3d 1068, 1071-1072 (7th Cir. 2001). In any event, Defendant did not present any such argument as a basis for summary judgment.

contains allegations beyond those contained in the charge. But the differences do not lead to summary judgment for the Defendant.

Hill alleges in the SAC that Defendant ignored her doctor's recommendations that she not be subjected to certain activities while recovering from her back injury and that the assignments given to Hill limit the weight that she was required to handle. The SAC also states that Hill requested accommodations, including a request for a clerk position, that were denied, resulting in isolation and an inability to maintain her regular work schedule. A comparison of the SAC to the EEOC charge reveals that Hill sufficiently alleged failure to accommodate in her charge. Initially, Hill checked the disability discrimination box on the EEOC charge and noted that the alleged discrimination was for "On the job Back Injury." That allegation, by itself, is not dispositive, because there are different types of disability discrimination that may (or may not) encompass failure to accommodate. However, Hill raised numerous allegations on this issue, and she need not rely on checking that box alone.

Hill's EEOC charge also adequately documents Defendant's alleged disregard of Hill's recommended restrictions and failure to make accommodations to allow Hill to maintain a regular work schedule. As the charge reflects, Hill contends that she was told that her "doctor can't tell them what to do and I have been hired to be a carrier and I am going to carry mail and that's it." She also stated in her charge the following: "I am seeking permanent reassignment at the Hazel Crest Post office due to permanent restrictions from my on the job injury. James Fiscauldo told my union vice president that he was going to force me to go back to the street carrying mail against my doctor's restriction! James Fiscauldo will not let me case mail on my route but he said I could carry my route * * * My doctor says I can't carry mail because it will always cause me to have recurrences [sic]. Dr. Brooker recommended permanent change of

'inside duties.' They aren't willing to accommodate me!" In light of these statements, the Court concludes that Hill sufficiently alleged a failure to accommodate claim in her EEOC charge.

Whether the specific claims that Hill was denied a clerk position for which she was qualified and that she was isolated may be considered as a basis for the failure to accommodate claim requires closer scrutiny. As noted above, a "Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Teal*, 2009 WL 723186, at *3. The question is whether Hill's allegations are "'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'" *Id.* (citations omitted). In light of that liberal standard and the Court's obligation to view the facts in the light most favorable to Plaintiffs at the summary judgment stage, several considerations weigh in favor of finding in Plaintiff's favor at this stage of the case. Most significantly, the claims at issue here involve the same individuals that were present in all of Plaintiff's relevant contentions – a minimum requirement for permitting allegations that are not set out expressly in the charge.

Defendant contends that these incidents had not even occurred at the time of the EEOC charge, so they could not have been included in the charge. However, the record reflects otherwise, at least in regard to the allegation of isolation. In a pre-counseling form filled out by Hill prior to Case No. 0101-005, Hill alleged "isolation where they keep me in a corner by myself all day." Under even a cursory investigation of Hill's allegations, that particular allegation would have come to light; therefore, the Court will consider it. On the other hand, Plaintiff's allegation that she was denied a clerk position is not contained in the EEOC charge or the pre-counseling forms. Although such an allegation likely would pass the "like or reasonably related to" test, the record simply is unclear whether the incident occurred prior to the filing of

the EEOC charge. If it occurred after Hill filed her charge in Case No. 0101-05, it cannot be considered as support for her discrimination claim.[5] However, because the allegations that the Court may consider are sufficient to support a failure to accommodate claim, the Court must deny Defendant's motion for summary judgment as to Count I.

### 2. Retaliation

Analysis of Hill's retaliation claim requires a slightly different approach because it is uncertain when the events underlying the claim took place – *i.e.*, whether they took place before or after Hill filed her complaint in Case No. 0101-05. One of the allegations appears to have taken place in response to the filing of Case No. 0101-05. In particular, Count II of the SAC states that Hill engaged in protected activity by filing an EEOC complaint on June 16, 2005 which is the date Case No. 0101-05 was filed. In the next paragraph of the SAC, Hill alleges that Fiscauldo knew that he was named in the complaint and that he subsequently took away Hill's no-lunch privileges in retaliation, an action that amounts of a denial of overtime. Obviously, these allegations could not have been contained in Hill's EEOC complaint.

The Seventh Circuit has addressed this temporal issue, which is inherent in retaliation claims such as this one. As a starting point, the court of appeals has favorably cited a decision which noted:

> It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case – a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with eh intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers

---

[5] As discussed below, discrimination claims and retaliation claims differ in this regard.

from attempting to discourage employees from exercising their rights under Title VII.

*McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 482 (7th Cir. 1996) (quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)). At the same time, however, the court limited its acceptance of *Gupta* to instances in which the retaliation could not have been alleged in the original charge. *Id.* at 483.[6] There is no indication on the present record of precisely when the "no-lunch" retaliation took place. Because the Court must view the facts in the light most favorable to Hill, the Court assumes from context that the incident took place after Case No. 0101-05 was filed, and Defendant does not contend otherwise. Therefore, the Court will consider Hill's contentions with respect to that incident as a basis for her retaliation claim.

The SAC also includes "other retaliatory adverse actions" taken by her supervisors including "harassment, drastically reducing Ms Hill's workload, and causing her to work in an isolated area and under conditions that aggravated her back injury." It is unclear whether those retaliatory actions were taken in reaction to previous EEOC complaints, in which case they were unexhausted if not included in her charge for Case No. 0101-05, or in reaction to Hill's complaint in Case No. 0101-05, in which case the Court may consider them. Although there are numerous allegations contained in Hill's charge that could have been made in response to her previous EEOC complaints, including the allegations that were "accepted" by the USPS for investigation, the Court will focus on her specific references to retaliation. In her charge she stated as follows:

> (i) "Retaliation! I am being discriminated against because of prior EEO activity";
> (ii) "I came home to find a letter * * * from Dale Schultz now retaliating because of my [previous] EEOC I filed against her. Dale states in the letter my thoracic

---

[6] Although some courts have questioned the continued validity of *McKenzie* in light of the subsequent decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), it remains good law in this circuit. See *Kruger v. Principi*, 420 F. Supp. 2d 896, 906-907 (N.D. Ill. 2006) (noting the Seventh Circuit continued to follow the rule after *Morgan*).

14

pain/strain from description of clinical findings from Dr. Brooker is ineligible. Dale Schultz is now mad because of the EEO I filed and so are the other managers involved James Fiscauldo, Suzanne Hawkins and Patrick Kavanaugh * * * All this harassment is going to cease * * *; (iii) "So why do they discriminate against me and not give me 40 hours a week * * *? Retaliation of course because of my EEO activity against them"; and (iv) "[t]he managers are all aware of my prior EEO activity since my EEO's are all filed against them * * * Their retaliatory actions are all because of my filing EEO's against them – Retaliating against me because of my permanent disability to not be able to no longer carry mail."

It is possible that Hill was subject to retaliatory actions both before and after filing Case No. 0101-05. However, at a minimum, the allegations in Hill's charge were sufficient to exhaust her claims of harassment and reduced workload and conditions that aggravated her back injury.

The only allegation from the SAC that (i) did not clearly occur post-charge and (ii) was not contained in Hill's EEOC charge is the allegation that Hill was forced to "work in an isolated area." As noted above, Hill did reference working in an isolated area in a pre-complaint form. Therefore, she could (and should) have included such an allegation in her charge, and the omission is not excused because she is now claiming retaliation. However, the Seventh Circuit also has made clear that a Title VII plaintiff need not include in her charge each and every fact that forms the basis of each claim in her complaint. *Teal*, 2009 WL 723186, at *3 (citations omitted). For the reasons explained above in connection with Hill's discrimination claim, the Court concludes that under the liberal exhaustion standard and Hill's contention that both sets of claims involved the same universe of supervisors and a similar course of treatment, Hill also may rely on the "isolation" incident in support of her retaliation claim. In any event, even if the "isolation" incident were ignored in connection with Hill's retaliation claim, the remaining exhausted allegations are sufficient to require denial of Defendant's motion for summary judgment.

As a final note, Hill checked the box on her complaint for "Retaliation" and noted "Prior EEO Activity."  That fact as well supports denial of summary judgment.  In sum, to the extent that the allegations in the SAC reference post-charge incidents, the Court may consider them pursuant to *McKenzie*.  And to the extent the incidents on which Hill relies occurred prior to the charge, they were sufficiently referenced or alluded to in her EEOC charge to have been exhausted.  The Court therefore denies Defendant's motion for summary judgment as to Count II.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion for summary judgment [61] as to both Counts I and II.

Dated:  March 31, 2009

Robert M. Dow, Jr.
United States District Judge